## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
                              )
UNITED STATES OF AMERICA,     )
                              )
            v.                )    Criminal Action No. 03-511 (RWR)
                              )
RICKEY LAMONT TALLEY,         )
                              )
            Defendant.        )
_____ )

### MEMORANDUM OPNION

Defendant Rickey Lamont Talley filed a motion under 28 U.S.C. § 2255 to vacate his plea, convictions, and sentence arguing that his counsel provided ineffective assistance by guaranteeing that the sentence would be at or below the statutory minimum, and that he was denied due process by being sentenced under sentencing guidelines for crack cocaine offenses which were unduly harsh and have since been lowered. Because Talley's § 2255 motion was not timely filed, the ineffective assistance of counsel claim is conclusory and unsupported, and the amended guidelines for crack cocaine offenses do not affect Talley's offense level, he is not entitled to relief.

### BACKGROUND

Talley was charged with conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iii) and conspiracy to distribute and possess with intent to distribute 1,000 grams or more of phencyclidine ("PCP"), in violation of 21

- 2 -

U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iv).  Talley pled guilty to
both counts.  (Plea Tr. at 46-47.)

        The factual proffer that Talley signed and agreed to under
oath (id. at 41) sets forth the following facts.  Talley's co-
conspirator, Thomas Jennings, III, traveled from Maryland to New
York once or twice per month from January 1999 to October 2003 to
obtain between twenty-eight to thirty-two ounces of PCP.  Talley
obtained approximately one to two ounces of cocaine base every
two to three months from multiple sources.  Talley distributed
the drugs to his co-conspirators.  With the assistance of a
government cooperator, the police completed several controlled
drug purchases from Talley.  The police searched Talley's
residence and found Jennings present bearing weapons, PCP, and
cash.  The police found several weapons, including a .9mm pistol
and a .32 caliber revolver, a large sum of cash, and PCP in
Talley's residence, vehicle, and garage.  (Id. at 37-42; United
States v. Talley, Criminal Action No. 03-511 (RWR), Elements of
Offense & Proffer of Evidence, Docket Entry 18, Nov. 21, 2003.)
Talley's total offense level under the 2005 U.S. Sentencing
Guidelines ("U.S.S.G.") manual was 37 and his criminal history
category was I, which resulted in a guideline range of 210 to 262
months.  At sentencing, though, after the sentencing factors
under 18 U.S.C. § 3553(a) were considered, a downward departure
reduced the total offense level to 35, yielding a guideline range

- 3 -

of 168 to 210 months.  Talley was sentenced to 168 months on each
count to run concurrently.  He did not file an appeal.

Talley claims that his attorney, G. Allen Dale, was
ineffective because he erroneously assured Talley "that [Talley]
would receive, at the worst, the statutory minimum prison term
for his offenses of conviction[,]" and argues that he was
sentenced under "unduly harsh Guidelines concerning crack cocaine
that have since been amended."  (Pet'r Mot. to Vacate, Correct,
or Set Aside the Pet'r Sentence Pursuant to 28 U.S.C. § 2255
("Pet'r Mot.") at 1; see also Pet'r Mem. of Law in Supp. of Mot.
("Pet'r Mem.") at 2.)  Talley seeks to "vacate the plea,
convictions, and subsequent sentence" and also requests an
evidentiary hearing.  (Pet'r Mot. at 1.)

DISCUSSION

In a § 2255 motion, the petitioner can move to "vacate, set
aside, or correct the sentence" if the sentence was "imposed in
violation of the Constitution or laws of the United States[.]"
28 U.S.C. § 2255(a).  The petitioner bears the burden of proving
the violation by a preponderance of the evidence.  United States
v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).  An
evidentiary hearing does not need to be held when the "motion and
the files and the records of the case conclusively show the
prisoner is entitled to no relief."  United States v. Horne, No.
99-3080, 2000 WL 60246, at *2 (D.C. Cir. Jan. 4, 2000) (noting

- 4 -

that it is within the court's discretion whether to hold a
hearing when it is the same court that presided over the
petitioner's criminal proceedings).

I.   STATUTE OF LIMITATIONS

A § 2255 motion has a one-year statute of limitations.  28
U.S.C. § 2255(f).  The limitations period runs from the latest of
"(1) the date on which the judgment of conviction becomes final;
[or] . . . (3) the date on which the right asserted was initially
recognized by the Supreme Court, if that right has been newly
recognized by the Supreme Court and made retroactively applicable
to cases on collateral review."  Id.  Because Talley did not file
an appeal, his conviction became final within ten days after the
entry of the judgment.  United States v. Booker, 564 F. Supp. 2d
7, 12 (D.D.C. 2008) (stating that "[i]f a criminal defendant does
not appeal, the judgment of conviction becomes final when the
time period for filing an appeal expires, ten days after entry of
the judgment"); United States v. Shelton, 539 F. Supp. 2d 259,
266-67 (D.D.C. 2008) (stating that "[s]ection 2255(f)(1)'s
reference to 'the date on which the judgment of conviction
becomes final,' denotes the date on which the judgment became
final by the conclusion of direct review or the expiration of the
time for seeking such review" (citing Clay v. United States, 537
U.S. 522, 527-31 (2003))).

- 5 -

Here, judgment was entered on October 5, 2006 and the deadline for filing an appeal was October 20, 2006.  One year from October 20, 2006, which was October 20, 2007, was the deadline for Talley's § 2255 motion.  See 28 U.S.C. § 2255(f)(1). Talley filed his § 2255 motion untimely on November 13, 2007.

Talley argues that the one-year deadline did not start to run until November 1, 2007 under § 2255(f)(3), because that was the effective date of the sentencing guidelines that reduced the offense levels for crimes involving crack cocaine.  However, a right under § 2255(f)(3) must have been "newly recognized by the Supreme Court."  28 U.S.C. § 2255(f)(3).  In Dodd v. United States, 545 U.S. 353 (2005), the Supreme Court emphasized that under § 2255(f)(3), "a federal prisoner seeking to assert that [new] right will have one year from this Court's decision within which to file his § 2255 motion."  Id. at 358-59 (emphasis added).  Dodd further stated that § 2255(f)(3)'s provision that starts the limitations period on "'the date on which the right asserted was initially recognized by the Supreme Court' . . . does not apply at all if the conditions in the second clause - the right 'has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review' - have not been satisfied."  Id. at 358 (quoting 28 U.S.C. § 2255); see also United States v. Anderson, Criminal Action No. 89-160-01 (TFH), 2006 WL 751310, at *2 n.1 (D.D.C. Mar. 20, 2006) (stating

- 6 -

that "[o]nly the Supreme Court can make a rule retroactive for the purposes of § 2255"). Talley does not offer any support for the proposition that when the U.S. Sentencing Commission lowers an offense level, that constitutes a right newly recognized by the Supreme Court under § 2255(f)(3). Thus, because the limitations period is triggered by § 2255(f)(1) and not § 2255(f)(3), and because the deadline for Talley's § 2255 motion was October 20, 2007, or one year from "the date on which the judgment of conviction becomes final[,]" Talley's § 2255 motion is untimely. See 28 U.S.C. § 2255(f)(1).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Even if the motion were timely, Talley is entitled to no relief. In order to prove ineffective assistance of his counsel, Talley must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Concerning the first prong, the petitioner must show that counsel did not provide reasonable service under the "prevailing professional norms" given the circumstances. Id. at 688. Those norms can be measured by "an attorney's ethical duties, including those which require counsel to bring skill and knowledge to the case and to provide zealous representation." Best v. Drew, Criminal Action

- 7 -

No. 01-262 (RWR), 2006 WL 2035652, at *3 (D.D.C. July 18, 2006).
Counsel's performance is evaluated on the basis of how counsel
would have viewed it at the time without the benefit of
hindsight.  Strickland, 466 U.S. at 689.  As to the second prong,
a reasonable probability is a "probability sufficient to
undermine confidence in the outcome."  Strickland, 466 U.S. at
694; see also United States v. Bowie, 198 F.3d 905, 908-09 (D.C.
Cir. 1999) (noting that a reasonable probability "can be less
than 50.01%").  "Even if the files and records of the case do not
clearly rebut the allegations of the [petitioner], no hearing is
required where his claims are 'vague, conclusory, or palpably
incredible.'"  United States v. Pollard, 959 F.2d 1011, 1031
(D.C. Cir. 1992) (quoting Machibroda v. United States, 368 U.S.
487, 495 (1962)).

An ineffectiveness of counsel claim "'arising out of the
plea process' must be evaluated under the Strickland test."
Best, 2006 WL 2035652, at *5 (quoting Hill v. Lockhart, 474 U.S.
52, 57 (1985)).  A plea based upon the advice of counsel that
"'falls below the level of reasonable competence such that the
defendant does not receive effective assistance' is neither
voluntary nor intelligent."  United States v. McCoy, 215 F.3d
102, 107 (D.C. Cir. 2000) (internal citation omitted) (quoting
United States v. Loughery, 908 F.2d 1014, 1019 (D.C. Cir. 1990)).
When the evidence supports a defendant's assertion that he would

- 8 -

not have accepted the plea agreement but for counsel's erroneous advice, a defendant has been prejudiced.  See <u>United States v. Streater</u>, 70 F.3d 1314, 1318, 1322 (D.C. Cir. 1995) (stating that the defendant's affidavit asserting his innocence and intention to argue a defense, and his rejection of plea offers until after counsel erred and the judge sent for a jury panel, support an intent to proceed to trial).  To satisfy the required showing of prejudice, a "defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial[.]'" <u>United States v. Horne</u>, 987 F.2d 833, 836 (D.C. Cir. 1993) (quoting <u>Key v. United States</u>, 806 F.2d 133, 139 (7th Cir. 1986)).  <u>See also</u> <u>United States v. Tolson</u>, 372 F. Supp. 2d 1, 19 (D.D.C. 2005) (stating that the <u>Strickland</u> test requires not "some" probability, but "reasonable" probability, a threshold that bare allegations fail to satisfy).  The prejudice determination is "closely related to the objective prediction of whether the defense could succeed if the case went to trial." <u>United States v. Del Rosario</u>, 902 F.2d 55, 58 (D.C. Cir. 1990) (noting that whether there is a colorable claim of innocence is relevant to the determination of a motion to vacate a plea due to ineffective assistance of counsel).  A defendant's representations at the plea hearing regarding "adequacy of counsel and the knowing and voluntary nature of his plea . . . may 'constitute a formidable barrier' to . . . later

refutations." <u>United States v. Taylor</u>, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal citations omitted) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

Talley alleges that Dale was ineffective because he "[as]sured the Petitioner that his sentence would be at the statutory minimum, or perhaps even below the minimum should cooperation be provided to the government[,]" and that "[a]bsent such a guarantee, the Petitioner would not have entered a guilty plea." (Pet'r Mot. at 2.)  Talley's unsworn claim that Dale promised him a statutory minimum sentence, and that Talley was "not in a position to understand that counsel really had no ability to deliver such a sentence" (Pet'r Reply to Gov't Opp'n to Mot. to Vacate, Correct, or Set Aside at 2) contradicts Talley's sworn statements during the plea hearing, is conclusory, and is unsupported by the facts.  Rule 11 prescribes procedural safeguards to ensure that a guilty plea is entered into knowingly, voluntarily, and intelligently.[1]  <u>See</u> Fed. R. Crim. P.

_____

[1] In considering and accepting a guilty plea, a court must inform a defendant of several things, including the right to plead not guilty; the right to a jury trial; the right to be represented by counsel at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; the defendant's waiver of these trial rights if the court accepts a plea of guilty; the nature of each charge to which the defendant is pleading; and any maximum possible penalty.  Fed. R. Crim. P. 11(b)(1).  A court must also determine that a plea is voluntary and did not result from force, threats, or promises other than promises in the plea agreement,

11(b).  Talley does not argue that the plea colloquy itself was
unconstitutional; an examination of the transcript reveals that
Talley's guilty plea was "attended by all the required procedural
safeguards" of Rule 11.  <u>United States v. Cray</u>, 47 F.3d 1203,
1208 (D.C. Cir. 1995).  <u>See also</u> <u>Loughery</u>, 908 F.2d at 1017-18
(stating that "[a] guilty plea is valid only if voluntarily and
intelligently made, 'with sufficient awareness of the relevant
circumstances and likely consequences'" (quoting <u>Brady v. United
States</u>, 397 U.S. 742, 748 (1970))); <u>Fears v. United States</u>, Civil
Action No. 06-86 (JDB), 2006 WL 763080, at *8 (D.D.C. Mar. 24,
2006) (stating that "'[t]he rule that a plea must be
intelligently made to be valid does not [mean] that a plea [will]
be vulnerable to later attack if the defendant did not correctly
assess every relevant factor entering into his decision'"
(quoting <u>Brady</u>, 397 U.S. at 757)).

During the plea, Talley acknowledged that he read and
understood the plea agreement and discussed its terms with Dale.
(Plea. Tr. at 26-27.)  Talley agreed that the factual proffer
read in court was a "true and accurate" description of the events
that occurred; he said he had sufficient time to speak with his
attorney; he declined an opportunity to ask any additional
questions or speak with his lawyer before entering a plea; and he

---

and that there is a factual basis for the plea.  Fed. R. Crim. P.
11(b)(2)-(3).

proceeded to voluntarily admit guilt.  (Id. at 9-10, 41, 46.)  He
acknowledged that his lawyer's sentencing prediction was not
conclusive and that the court would make the final determination
of his guideline range only after the presentence report was
completed and the parties had an opportunity to make objections.
(Id. at 32.)  Talley acknowledged that "the sentence imposed may
be much higher than any estimate that [he] may have heard from
[his] lawyer or from the government," that he could be sentenced
to as long as life in prison, and that the court had "authority
in some circumstances to impose a sentence that is more severe or
less severe than the sentence called for by the guidelines."
(Id. at 33.)  He understood that the government had discretion in
whether to file a motion for downward departure following
Talley's cooperation, and that if a departure motion were filed,
it would be the court who would decide whether to grant the
motion.  (Id. 33-34.)  Talley affirmed that he had not received
any promises regarding what sentence would be imposed by the
court or that he would receive a lighter sentence in exchange for
pleading guilty.  (Id. at 44.)  Talley acknowledged that he
received no promises in connection with his guilty plea other
than those contained in the agreement.  (Id.)  Furthermore, Dale
has declared under penalty of perjury that he "made no promises
or guarantees of any kind to Mr. Talley concerning the sentence
he would receive if he cooperated with the government."  (Gov't

Opp'n, Decl. of G. Allen Dale ¶ 5.)   Talley presents no reason to
disregard his sworn statement at his plea hearing that he
understood the potential sentence he faced and hold that his plea
was not entered into knowingly and intelligently.   See Best, 2006
WL 2035652, at *5 (rejecting the defendant's claim that he did
not enter his plea knowingly and intelligently because at the
plea hearing the charges were fully explained to him and the
court found that the defendant was "fully competent and capable
of waiving his trial rights, [understood] the nature and
consequences of what he was doing, and . . . was acting
voluntarily and of his own free will").

Even if Dale's advice were deficient, Talley would still
have to show that he was prejudiced.  Here, the government's
evidence included audio and video surveillance tapes of Talley
selling PCP multiple times, a large volume of PCP recovered from
Talley during the controlled purchases, incriminating testimony
from a cooperating co-conspirator who engaged in the controlled
purchases, and weapons, drugs, and money recovered from Talley's
residence and garage.  If he had gone to trial and were
convicted, Talley likely would have lost the three-point offense
level reduction he was awarded under U.S.S.G. § 3E1.1 for
acceptance of responsibility, exposing him to a higher guideline
sentencing range of 292-365 months.  U.S.S.G. § 5A (2005).
Moreover, while the government did not move for a downward

- 13 -

departure beneath the minimum guideline range or the statutory mandatory minimum sentence under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), Talley would have lost the opportunity to earn such a departure had he proceeded to trial.  See United States v. Hanson, 339 F.3d 983, 991-92 (D.C. Cir. 2003) (finding that the defendant failed to show prejudice in part because "it [was] extremely doubtful that, had [the defendant] been advised that the sentencing range for conviction after a guilty plea was 262 to 327 months, with a reasonable reduction anticipated for cooperation [under § 5K1.1], [the defendant] would have chosen to go to trial despite the overwhelming likelihood that as a consequence he would spend the rest of his life in jail").  Talley's unsworn assertion that he would have pled not guilty absent Dale's alleged guarantee of a statutory minimum or lower sentence and proceeded to trial is conclusory and unsubstantiated.  Such bare allegations are insufficient to establish prejudice or to warrant an evidentiary hearing.

III. LOWERED SENTENCING GUIDELINES FOR CRACK COCAINE

      Talley also argues that he was denied due process since the guidelines under which he was sentenced were unduly harsh and have since been amended to lower the offense levels for crack cocaine offenses.  While Talley's attack on the original sentencing guidelines for crack cocaine offenses has some merit, the lowered guidelines make no difference in the adjusted offense

- 14 -

level applicable to his offenses.  Talley's guideline level was
the result of a higher-scoring quantity of PCP and a lower-
scoring amount of crack cocaine.  The amended guidelines reduce
the combined offense level by 2 levels when "the offense involves
cocaine base ('crack') and one or more other controlled
substance[.]"  U.S.S.G. § 2D1.1 n.10(D)(i) (2009).  However,
"[t]he 2-level reduction provided in subdivision (i) shall not
apply in a case in which . . . the 2-level reduction results in a
combined offense level that is less than the combined offense
level that would apply under subdivision (B) of this note if the
offense involved only the other controlled substance(s) (i.e.,
the controlled substance(s) other than cocaine base)."  U.S.S.G.
§ 2D1.1 n.10(D)(ii) (2009).  In Talley's case, the PCP quantity
alone, which was scored as equivalent to 40,000 kilograms of
marijuana, produced an offense level of 38.  U.S.S.G. § 2D1.1
(2009) (assigning a base offense level of 38 to 30,000 kilograms
or more of marijuana).  Combining the crack cocaine, which was
scored as equivalent to 10,000 kilograms of marijuana, and the
PCP also results in an offense level of 38.  (Id.)  Applying the
two-point reduction in the amended guidelines would result in a
combined offense level of 36, which is lower than the base
offense level for the PCP quantity alone, and would contravene
§ 2D1.1 n.10(D)(ii).  Therefore, the amended guidelines produce

- 15 -

no change in Talley's total adjusted offense level, and afford
him no relief.

## CONCLUSION

Talley's § 2255 motion was not timely filed, and his
ineffective assistance of counsel claim is conclusory and
unsubstantiated.  While the guidelines for crack cocaine were
amended after his sentencing, the amended guidelines would make
no difference in Talley's total adjusted offense level.  Talley
is not entitled to any relief under 28 U.S.C. § 2255, and his
motion will be denied.

An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 17th day of December, 2009.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge